ORIGINAL

RECEIVED
MAR 0 1 2010
PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------- X

GARY TSIRELMAN, M.D.,

Plaintiff

-against-

RICHARD F. DAINES, M.D.,
Commissioner of Health, New York
State Department of Health; and New
York State Department of Health; and
KENDRICK A. SEARS, M.D., Chairman of
the State Board For Professional
Medical Conduct, New York State
Department of Health, and State
Board For Professional Medical
Conduct and their employees and
agents.

Defendants.

----------------------------------------- X

Civ. No.:

CV 10- 0903

COMPLAINT

JURY TRIAL DEMANDED

WEINSTEIN, J.

MANN. M.J.

Plaintiff, GARY TSIRELMAN, M.D. ("plaintiff"), pro se, for his complaint, alleges as follows:

JURISDICTION AND VENUE

1.    Plaintiff brings this action pursuant to 42 U.S.C. §§1983 and 1988 to secure injunctive and declaratory relief from actions initiated by defendants in violation of plaintiff's due process and equal protection rights under the Fourteenth Amendment to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§1343 and 1331.

2.    Venue is proper in this District under 28 U.S.C. §1391(b) because the claims arose in this District.

## THE PARTIES

3. Plaintiff is a physician who was licensed to practice medicine in the State of New York in December of 1996.

4. Defendant Richard F. Daines, M.D. is presently the Commissioner of Health, New York State Department of Health (''DOH''), and is named in this action in his official capacity. At all times relevant to plaintiff's claims, DOH is and was an agency of the State of New York with responsibility for, inter alia, the promulgation of certain rules and regulations, which are the subject of this action.

5. Defendant Kendrick A. Sears, M.D. is presently the Chairman of the State Board for Professional Medical Conduct (''State Board''), and is named in this action in her official capacity. At all times relevant to plaintiff's claims, the State Board is and was a board created under Section 230 of the New York State Public Health Law, which, inter alia, makes recommendations through its investigative committees as to whether charges of professional medical misconduct should be brought against physicians. The State Board also conducts hearings and makes rulings on charges of professional misconduct, and issues sanctions pertaining to such charges through its committees on professional conduct. In plaintiff's case, a committee on professional conduct (hereinafter referred to as the ''Hearing Committee'') was assigned under this regulatory scheme to hear and determine charges against plaintiff filed by the Office of

Professional Medical Conduct (''OPMC''), which is and was an office within the DOH with responsibility for investigating allegations of professional medical misconduct by physicians.

## NATURE OF THE CASE

6.    Plaintiff is seeking declaratory and injunctive relief from this Court under 42 U.S.C. §§1983 and 1988 on the grounds that the defendants have denied him due process in the course of revoking his license to practice medicine.

7.    In 2007, DOH served plaintiff with a Notice of Hearing and Statement of Charges asserting that plaintiff had practiced the profession of medicine fraudulently by knowingly and intentionally submitting false claims to Allstate Insurance Company (''Allstate''); by willfully filing a false report; and by ordering excessive tests or treatments not warranted by the condition of a patient, and was, therefore, according to the DOH, morally unfit to practice medicine.

8. A hearing was conducted on the charges filed against the plaintiff, at the end of which DOH sustained 51 out of 69 charges and stripped the plaintiff of his license and livelihood.

9.    Defendants conducted the proceedings under Public Health Law §230(10)(f), pursuant to which DOH's burden of proof is merely a ''preponderance of the evidence'', as

- 3 -

opposed to ''clear and convincing proof'', even when defendants seek license revocation.

10. Plaintiff submits that the application of the ''clear and convincing'' burden of proof is constitutionally required in license revocation cases, and that the application of a ''preponderance of the evidence'' standard denied him due process.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

11. Plaintiff received his medical license in 1996. In August of 2000, plaintiff acquired a clinic with which he had been associated professionally, named LaMed Medical, P.C. (''LaMed''). He owned and operated LaMed for eleven (11) months through July 2001.

12. Prior to acquiring ownership of LaMed, plaintiff was assured that the general management, upkeep and billing of LaMed were performed by a management company named Flatlands Best (''Flatlands Management'').

13. Flatlands Management told the plaintiff that the medical bills for his services would routinely be issued by Flatlands Management several months after his services were provided.

14. Plaintiff had also been studying law, and graduated from Brooklyn Law School in June, 2000. After 11 months of ownership of LaMed, and with the desire to practice law, he transferred his ownership interest in LaMed to another physician as of July, 2001.

15.   Plaintiff has been practicing law since he was admitted to the New York State Bar in June of 2001.

16.   Plaintiff's law practice involves the representation of other physicians on medical insurance reimbursement claims.   .

17.   On or about February 21, 2007, five and one-half years after plaintiff had ceased having any ownership interest in LaMed and had also stopped practicing medicine, but after he had established his law practice bringing physician reimbursement claims against medical insurers, DOH served him with a Notice of Hearing and Statement of Charges in the instant matter based on complaint filed with DOH by the Allstate Insurance Company.

18.   The DOH based its fraud charges on the allegation that plaintiff wrongfully billed Allstate for nerve destruction procedures (sometimes hereinafter referred to as ''NDPs'') when no NDPs were performed.

19.   At the hearing on the DOH charges, a number of witnesses testified in support of plaintiff's honesty and integrity.   Notably, even his prominent adversary in hundreds of cases, GEICO Insurance Company's attorney, testified that plaintiff's ''word is his bond.''

20.   Likewise, a retired New York State No Fault Arbitrator and professor of law described plaintiff as a tenacious advocate who never skirted or evaded the truth, and that plaintiff had a reputation for veracity and personal integrity of the highest order.

21. At the DOH hearing, plaintiff testified that he had never represented that he had performed such Nerve Destruction Procedures or had tried to bill for NDPs. Rather, he conducted Synaptic Treatments (sometimes hereinafter referred to as "STs") for which no billing codes existed.

22. Plaintiff further testified that he was not involved in decisions concerning which billing codes to utilize for those Synaptic Treatments. Instead, those decisions were made by Flatlands Management and, specifically, the person who prepared the medical bills, Elena Rodriguez.

23. Elena Rodriguez testified unequivocally that plaintiff did not create the bills, nor did plaintiff ever direct her as to which procedure to bill, nor did he discuss with her which billing codes to use, including which codes to use for Synaptic Treatments. Instead, she stated she alone would review LaMed's medical charts to determine which procedure to bill and then would use the codes that Flatlands Management instructed her to use in addition to utilizing a customized computer program supplied by Flatlands Management.

24. Flatlands Management provided Elena Rodriguez with the codes under which to bill the Synaptic Treatments, and as part of her practice, Ms. Rodriguez would also attach the copies of any corresponding medical records to the bill, specifically records of Synaptic Treatments, to ensure that

the insurance company was aware of the actual procedure performed.

25.   The identical billing codes, (i.e., 64613, and 64550), were used on the billings for the Synaptic Treatments.

26.   At the hearing, uncertified and incomplete records were admitted into evidence by the DOH Hearing Committee, and DOH's expert witness, Joseph Carfi, M.D., based his analysis on those records.   Thus, his testimony relating to the inadequacy of plaintiff's documentation, the medical necessity for treatments, the ordering of services, and the billing, was without the benefit of reviewing the patient's history, initial reports, progress notes, test results and discharge notes.

27.   During his testimony, Dr. Carfi admitted that, if he were provided with some of the alleged missing notes, tests, and documentation, it certainly could have affected his analysis and testimony.

28.   Despite the incomplete and uncertified records admitted in the DOH hearings and the unequivocal testimony that plaintiff never billed for NDPs, nor directed such billing, on or about December 5, 2007, the DOH served plaintiff with Determination and Order No. BPMC 07-269, issued by the Hearing Committee ("the DOH Order").   The DOH Order revoked plaintiff's license to practice medicine in the State of New York, and imposed a fine of $100,000.00.

29. In the first paragraph of its Summary in the DOH Order, the Hearing Committee acknowledged that the records utilized at the hearing "may not be full and complete," but stated that the Committee's findings and conclusions were "based on the information that was available." The Hearing Committee further acknowledged that the information contained in the admitted records constituted a "wholly inadequate" patient record.

30. The Hearing Committee found the testimony of the person who prepared and submitted the bills, Ms. Rodriguez, with regard to substantiating the missing information from the medical charts, interesting, "but of very little value" with respect to the allegations of fraud against the plaintiff, even though those allegations arose from the billing codes used for the Synaptic Treatments on the bills that Ms. Rodriguez solely prepared, and even though Ms. Rodriguez corroborated plaintiff's testimony as to his limited involvement in the billing.

31. The Hearing Committee found that the plaintiff lacked any credibility despite the corroboration of his testimony by both the Flatlands Management biller, Elena Rodriquez, and the Department's own patient witness, "Patient A."

32. The DOH Hearing Committee sustained 51 of 69 charges of professional misconduct against petitioner, including fraudulent medical practice, willfully making or filing false reports, ordering treatment not warranted by

patient conditions, and moral unfitness.

33. Plaintiff challenged the DOH Order revoking his license in an Article 78 proceeding under the New York Civil Practice Law & Rules ("CPLR"), commenced directly in the Appellate Division of the State of New York, Third Department, on December 13, 2007.

34. The Appellate Division held that physicians are ultimately responsible for the accuracy of their bills, and based on the Hearing Committee's finding of the plaintiff's long-term relationship with the clinic in question and the Hearing Committee's finding that the plaintiff lacked credibility, the Appellate Division determined that the Hearing Committee "could infer his knowledge that the bills were false, rather than merely inaccurate, and that he had willfully intended to mislead and deceive the insurer . . . [citations omitted] Thus, the evidence presented and the inferences reasonably flowing therefrom amply support the sustained charges of fraudulent medical practice, filing false report and moral unfitness." (Emphasis added.)

35. The plaintiff had asserted in the Appellate Division that he was denied his rights to a fair hearing and due process by the Hearing Committee's admission and consideration of patient records that were uncertified and allegedly incomplete. However, the Appellate Division held that, since strict rules of evidence do not apply in administrative proceedings, the plaintiff was required to show that the lack of certification infected the entire

- 9 -

proceeding with unfairness in order to establish a deprivation of due process.

36. The Appellate Division did nullify certain DOH charges against plaintiff, leaving in place the DOH's Determination and Order with respect to billing for Synaptic Treatments. With regard to the billing charges, the Appellate Division held that the DOH had sufficiently plead and proven all elements of the alleged fraud.

37. On May 8, 2009, petitioner moved in the Appellate Division for re-argument or permission to appeal to the New York State Court of Appeals. Plaintiff's motion was denied by the Appellate Division on June 26, 2009.

38. Plaintiff thereafter moved for leave to appeal to the Court of Appeals, and that motion was denied by the Court of Appeals on October 22, 2009.

39. The revocation of plaintiff's medical license is having far-reaching adverse effects on the plaintiff's life and livelihood.

40. Unless plaintiff obtains the relief he seeks in this action, plaintiff could lose his ability to make a living.

## FIRST CLAIM FOR RELIEF FOR A
## DECLARATORY JUDGMENT PURSUANT TO 42 U.S.C. §1983

41. Plaintiff incorporates each and every allegation in paragraphs "1" through "40" as if fully set forth herein.

42.   Plaintiff's medical license is a constitutionally protected property interest under the Fourteenth Amendment of the U.S. Constitution.

43.   Plaintiff has been deprived of his property interest by persons acting under color of state law.

44.   Plaintiff has alleged that the DOH's rules and regulations are, per se, unconstitutional.

45.   The State's interest in monitoring the conduct of its licensed physicians is clearly significant, but the constitutional issues raised herein predominate and the plaintiff will suffer irreparable harm if his license is not reinstated.

46.   On the basis of the aforesaid violations, plaintiff requests this Court to issue a judgment declaring the applicable and pertinent rules and regulations of the Department's Uniform Hearing Procedures and provisions of the Public Health Law governing OPMC hearings to be unconstitutional in their entirety or, alternatively, declaring the application of such rules and regulations to plaintiff's disciplinary proceeding unconstitutional.

47.   On the basis of a declaration of unconstitutionality, plaintiff further requests this Court to issue a declaratory judgment nullifying the Decision and Order of the Hearing Committee (Order No. BPMC 07-269), which has resulted in the revocation of plaintiff's medical license.

SECOND CLAIM FOR RELIEF FOR A
PERMANENT INJUNCTION PURSUANT TO 42 U.S.C. §1983

48. Plaintiff incorporates each and every allegation of paragraphs ''1'' through ''47'' as if fully set forth herein.

49. Plaintiff maintains a protected property interest in his license to practice medicine under the Fourteenth Amendment of the U.S. Constitution.

50. Plaintiff has been deprived of his property interest by persons acting under color of state law.

51. Due to the fact that the DOH imposed an insufficient burden of proof on the allegations of fraud, which carried the severe penalty of revocation of plaintiff's medical license, plaintiff was deprived of a hearing conducted in a meaningful manner at a meaningful time, in violation of his constitutional right to due process, pursuant to 42 U.S.C. §1983.

52. Plaintiff was denied procedural safeguards due to the insufficiency of Public Health Law § 230(10)(f) and DOH's rules and regulations, which on their face, and/or, as applied by the defendants, deprived plaintiff of an opportunity to have his hearing conducted in a fair manner. This violated plaintiff's due process rights under 42 U.S.C. §1983.

53. On the basis of the aforesaid violations, plaintiff requests an injunction permanently enjoining

defendants from revoking plaintiff's medical license pursuant to Decision and Order No. BPMC 07-269.

THIRD CLAIM FOR RELIEF FOR A
PERMANENT INJUNCTION PURSUANT TO 42 U.S.C. §1983

54. Plaintiff incorporates each and every allegation of paragraphs ''1'' through ''53'' as if fully set forth herein.

55. In 2007, in the middle of OPMC proceedings, Plaintiff had filed a motion requesting that the Defendants release all exculpatory evidence.

56. By decision of Administrative Law Judge (''ALJ'') Plaintiff's motion was denied on the grounds stated in the *Matter of DiBlasio v. Novello,* 2006 NY Slip Op 2976 (N.Y. App. Div. 1st Dep't 2006). (Essentially, the ALJ ruled that the Plaintiff was not entitled to such relief.)

57. In November 2008, the State of New York amended and/or enacted Public Health Law Section 230 Part (d-1). Thus the *DiBlasio* decision was legislatively overruled.

58. The new law, in pertinent part, obligated the Defendants to ''after service of the charges upon the licensee, counsel for the office of professional medical conduct shall, as soon as practicable and on a continuing

- 13 -

basis, provide the licensee with any information or
documentation in the possession of the office of
professional medical conduct which tends to prove the
licensee's innocence''.


59. In August 2009, by way of a motion to renew, while
the case was still *sub judis*, Plaintiff demanded of
Defendants to release all exculpatory evidence that tends to
prove Plaintiff's innocence.


60. By letter dated November 6, 2009, respondents
denied petitioner's request.

61. While ordinary jurisprudence provides for vehicles
to reconsider prior decisions when the pertinent law on
which a prior decision was based had been
amended/changed/overruled (See e.g. New York's CPLR 2221)
the Defendants have no such rules and/or procedures.


62. The absence of such rules and the unwillingness by
the Defendant to reconsider a prior decision whose holding
was based on the legal framework which is no longer the law,
denies the Plaintiff due process rights under 42 U.S.C.
§1983.


WHEREFORE, plaintiff demands judgment as follows:

a)    on his First Claim for Relief, judgment (1) declaring the provisions of the Public Health Law §230(10)(f), in so far as they purport to allow findings of fraud and revocation of medical licenses based on merely a ''preponderance of the evidence,'' to be unconstitutional in their entirety or, alternatively, declaring the application of such rules and regulations to plaintiff's disciplinary proceeding unconstitutional; and (2) on the basis of a declaration of unconstitutionality, nullifying the Decision and Order of the Hearing Committee (Order No. BPMC 07-269), which has resulted in the revocation of plaintiff's medical license;

b)    on his Second Claim for Relief, judgment, pursuant to 42 U.S.C. §1983, permanently enjoining defendants from revoking plaintiff's medical license pursuant to Decision and Order No. BPMC 07-269; unless DOH conducts a new hearing on the remaining charges with the DOH applying and bearing the evidentiary burden to establish the remaining fraud charges based on clear and convincing evidence;

c)    On his Third claim for Relief, judgment, pursuant to 42 U.S.C. §1983, permanently enjoining defendants from revoking plaintiff's medical license pursuant to Decision and Order No. BPMC 07-269 unless DOH reconsiders its prior ruling and/or establishes procedures for reconsideration

of its prior rulings when the laws on which the prior rulings had been based are no longer valid.

d)   awarding plaintiff costs and fees incurred by plaintiff in maintaining this action to protect his constitutional rights, as provided for in 42 U.S.C. §1988;   And

e)   Returning $100,000.00 fine payment to the Plaintiff

d)   granting such other and further relief as this Court may deem just and equitable.


### DEMAND FOR A JURY TRIAL

Plaintiff demands a trial by jury as to all issues.

Dated:   Kings County, New York
         February 22, 2010

GARY TSIRELMAN, M.D., _
65 Jay Street
Brooklyn, New York 11201

718 438-1200
A.B. PROCCESS SERVER
3/1/2010

- 16 -