UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

GARY TSIRELMAN, M.D.,

*Plaintiff*,

-v.-

RICHARD F. DAINES, M.D., Commissioner
of Health, New York State Department of
Health; and New York State Department Of
Health; and KENDRICK A SEARS, M.D.,
Chairman of the State Board For Professional
Medical Conduct, New York State Department
of Health, and State Board For Professional
Medical Conduct and their employees and
agents,

*Defendants*.

Civil Action
No. 10 Civ. 0903 (JBW)(RLM)

October 6, 2010

## SUPPLEMENTAL REPLY MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

PRELIMINARY STATEMENT .................................................................................... 1

ARGUMENT ................................................................................................................ 3

I.    Res Judicata Does Not Bar Plaintiff's Facial Challenge Because
      the Article 78 Court Had No Authority To Decide, and No
      Obligation To Consider, Such a Challenge .................................................. 3

II.   Public Health Law § 230(10)(q) Does Not Provide a Mechanism
      To Ensure Application of Fairness-Related Procedures In Effect
      While a License Revocation Proceeding Is Under Direct Review ............. 7

      A.    N.Y. Public Health Law § 230(10)(q) Does Not Provide the
            Relief that Plaintiff Seeks .............................................................. 10

      B.    Pullman Abstention, Rather Than Dismissal, Is the
            Appropriate Method To Resolve Any Uncertainty Regarding
            the Scope of N.Y. P.H.L. § 230(10)(q) .......................................... 11

      C.    Plaintiff Has Standing To Challenge the Absence of a
            Procedure To Enforce the Exculpatory Evidence
            Requirement .................................................................................... 13

      D.    Younger Abstention Is Inappropriate as to this Claim Because
            There Is No Ongoing, Coercive State Proceeding ......................... 15

III.  Plaintiff Does Not Assert a Selective Prosecution Claim or Seek
      Exculpatory Evidence in this Litigation ................................................... 17

CONCLUSION ........................................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Aronson v. Hall*,
   707 F.2d 693 (2d Cir. 1983)................................................................... 14

*Bethune Plaza, Inc. v. Lumpkin*,
   863 F.2d 525 (7th Cir. 1988)................................................................. 16

*Bryant v. Comm'r of Social Srvs. of the City of N.Y.*,
   530 F. Supp. 1175 (S.D.N.Y. 1982) ...................................................... 12

*Charry v. Hall*,
   709 F.2d 139 (2d Cir 1983) .................................................................. 14

*Colon v. Coughlin*,
   58 F.3d 865 (2d Cir. 1995) ................................................................. 3, 7

*Davidson v. Capuano*,
   792 F.2d 275 (2d Cir. 1986)......................................................... 3, 4, 6, 7

*Dotson v. Griesa*,
   398 F.3d 156 (2d Cir. 2005)................................................................. 14

*England v. La. State Bd. of Med. Examiners*,
   375 U.S. 411 (1964) ............................................................................ 13

*Finley v. Giacobbe*,
   79 F.3d 1285 (2d Cir. 1996).................................................................... 4

*Fleet Bank, N.A. v. Burke*,
   160 F.3d 883 (2d Cir. 1998)................................................................. 13

*Habich v. City of Dearborn*,
   331 F.3d 524 (6th Cir. 2003)................................................................. 16

*Hachamovitch v. DeBuono*,
   159 F.3d 687 (2d Cir. 1988)................................................................... 6

*Handberry v. Thompson*,
   436 F.3d 52 (2d Cir. 2006)................................................................... 12

*Hartford Courant Co. v. Pellegrino*,
   380 F.3d 83 (2d Cir. 2004)................................................................... 12

ii

*Highland Hall Apts., LLC v. N.Y. State Div. of Housing & Community Renewal,*
    888 N.Y.S.2d 67 (2d Dep't 2009) .......................................................................... 5, 7

*Jackson-Bey v. Hanslmaier,*
    115 F.3d 1091 (2d Cir. 1997) .................................................................................. 13

*MacPherson v. Town of Southampton*, No. 08 CV 4113,
    2010 WL 3603128 (E.D.N.Y. Sept. 7, 2010) ......................................................... 13

*Maddox v. Prudenti,*
    303 F. App'x. 962 (2d Cir. 2008) (summary order) ................................................ 14

*Majewski v. Broadalbin-Perth Cent. Sch. Dist.,*
    91 N.Y.2d 577 (N.Y. 1998) .................................................................................... 10

*Moose Lodge No. 107 v. Irvis,*
    407 U.S. 163 (1972) ................................................................................................ 13

*Parker v. Corbisiero,*
    825 F. Supp. 49 (S.D.N.Y. 1993) .............................................................................. 6

*Pinckney v. Bd. of Educ. of Westbury Union Free Sch. Dist.,*
    920 F. Supp. 393 (E.D.N.Y. 1996) .................................................................... 15, 16

*Railroad Comm'n of Texas v. Pullman Co.,*
    312 U.S. 496 (1941) .................................................................................................. 9

*RRI Realty Corp. v. Incorporated Village of Southampton*, No. CV-84-3382,
    1987 WL 10837 (E.D.N.Y. Apr. 30, 1987) .............................................................. 5

*University Club v. City of New York,*
    842 F.2d 37 (2d Cir. 1988) ....................................................................................... 3

## **STATUTES**

N.Y. C.P.L.R. § 103 ................................................................................................ passim

N.Y. C.P.L.R. § 7803 ................................................................................................. 4, 6

N.Y. P.H.L. § 230(10)(d-1) ..................................................................................... passim

Plaintiff Gary Tsirelman respectfully submits this supplemental memorandum of law in reply to Defendants' supplemental memorandum filed September 29, 2010.

## PRELIMINARY STATEMENT

Defendants' new arguments provide no further support for their motion to dismiss.

The Second Circuit has considered and rejected Defendants' argument that claims unavailable in Article 78 proceedings might still be barred in subsequent litigation simply because an Article 78 court can, in its discretion, convert the proceeding into an ordinary civil action. To the contrary, res judicata applies only to those claims that could have been addressed in the Article 78 proceeding itself. Because, as Defendants concede, Plaintiff's facial constitutional challenges to the burden of proof and lack of evidentiary rules could not have been decided in an Article 78 proceeding, they are not barred by res judicata here.

There are also no grounds for dismissing Plaintiff's claim that due process requires the availability of a mechanism to ensure application of procedural rules tending to promote fairness – such as the rule relevant to this case that requires Defendants to produce exculpatory evidence – while a case is pending on direct review. On its face, N.Y. P.H.L. § 230(10)(q) does not provide the relief that due process requires in this case, and Plaintiff therefore has standing to assert this due process claim. In any event, if there is any uncertainty regarding the scope and availability of relief under section 230(10)(q), then *Pullman*-type abstention is appropriate, as is a stay, rather than dismissal, with respect to this claim. Dismissal under *Younger* is clearly inappropriate because the relevant state proceeding concluded long ago and is therefore not ongoing,

and because the issues addressed in this action are merely collateral to the original state proceeding.

Finally, Plaintiff does not assert any claim of selective prosecution in this litigation.  Plaintiff also does not ask this Court itself to compel production of exculpatory evidence on statutory or constitutional grounds; Plaintiff seeks only the opportunity to request exculpatory evidence before an ALJ with the power to consider and grant such a request.  It is unnecessary to consider Defendants' arguments disputing the merits of these nonexistent claims.

Notably, Plaintiff does not seek evidence of other physicians' billing practices to establish selective enforcement.  Rather, this evidence establishes that the billing codes available at the time were not comprehensive and could not fully describe Plaintiff's synaptic therapy, and that there was no other authority dictating the appropriate billing codes for the therapy.  The decision by Plaintiff's biller to select standard-practice billing codes representing the closest description of the therapy, and to attach medical records showing that only synaptic therapy had been performed, reflects no fraudulent intent.  It was merely the best and most appropriate way to obtain compensation for performing a therapy where the alternative was to provide the same treatment without reimbursement.

**ARGUMENT**

I.     **Res Judicata Does Not Bar Plaintiff's Facial Challenge Because the Article 78 Court Had No Authority To Decide, and No Obligation To Consider, Such a Challenge**

The Second Circuit has already considered, and flatly rejected, Defendants' new argument that claims such as Plaintiff's facial challenge – claims that are clearly unavailable in an Article 78 proceeding and that may be addressed only if the Article 78 court chooses in its discretion to convert that proceeding to an ordinary civil action – are nonetheless barred if properly asserted in a subsequent lawsuit, as here.  *See Davidson v. Capuano*, 792 F.2d 275, 280-81 (2d Cir. 1986).  In light of this controlling authority, Plaintiff's facial challenge is not barred and must be evaluated on its merits.

Defendants concede that New York state courts in Article 78 proceedings do not have the authority to decide a facial challenge to the constitutionality of a statute, which is exactly the claim that Plaintiff makes here.  *See* Def. Supp. Br. at 4, *see also University Club v. City of New York*, 842 F.2d 37, 40 (2d Cir. 1988) ("[C]onstitutional challenges to legislative enactments may not be raised in an Article 78 proceeding to review an administrative action.").  And res judicata under New York law does not bar claims, such as Plaintiff's facial challenge, that seek relief that the prior court could not have granted. *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 870 n.3 (2d Cir. 1995).  In an effort to circumvent this basic principle of res judicata, Defendants seek to expand the doctrine to encompass claims that the Article 78 court might have entertained in its discretion, had it decided to convert the proceeding to a declaratory judgment action under N.Y. C.P.L.R. § 103(c).  The Second Circuit has spoken definitively on this topic, however, holding that the possibility of conversion under section 103(c) does not bar a claim that could only

3

have been asserted in a converted action, particularly where such a conversion never took place, as here.  Defendants' argument must therefore fail.

In *Davidson*, the Second Circuit specifically rejected Defendants' core argument – that res judicata bars a claim that was unavailable in a prior Article 78 proceeding, but that might have been severed and converted to a civil action had it been raised in that proceeding, like Plaintiff's facial challenge here.  The power of a court to convert a claim pursuant to section 103(c) is, after all, merely "discretionary."  792 F.2d at 281.  Conversion under this provision is not meant to open Article 78 proceedings to all manner of claims, but rather to do "no more than to afford the opportunity to avoid unnecessary dismissals of claims inadvertently brought in the wrong form."  *Id.*  The limited applicability of section 103(c) makes perfect sense in light of the unique character and purpose of Article 78 proceedings – among other things, to "forc[e] a quick and efficient resolution of claims against state agencies."  *Finley v. Giacobbe*, 79 F.3d 1285, 1292 (2d Cir. 1996).  A contrary view would effectively nullify the New York legislature's decision to limit carefully the scope of questions that may be raised in Article 78 proceedings.  *See* N.Y. C.P.L.R. § 7803.

As the Second Circuit in *Davidson* concluded, it would be "unfair and illogical" to require an Article 78 petitioner, "on penalty of later preclusion, to knowingly assert a claim that is improper, in the hope that the state court in its discretion might sever the claim out and convert it into a civil action."  *Davidson*, 792 F.2d at 281.  This is exactly the situation presented here.  Had Plaintiff asserted in his Article 78 petition the same facial challenge he presents now to this Court, he could only have done so knowing that neither C.P.L.R. § 7803 nor New York state court precedents permit such facial

4

challenges in Article 78 petitions.  *See, e.g.*, *Highland Hall Apts., LLC v. N.Y. State Div. of Housing & Community Renewal*, 888 N.Y.S.2d 67, 70-71 (2d Dep't 2009).  Plaintiff's decision to abide by the requirements of C.P.L.R. § 7803 in formulating his Article 78 challenge should not now be used as a justification to bar claims unavailable under that section.  Otherwise, res judicata doctrine would force all Article 78 petitioners to treat the proceedings as ordinary civil actions under threat of later preclusion, essentially negating the very purpose of Article 78 proceedings: "to facilitate a 'summary disposition' of the issues presented."  *Davidson*, 792 F.2d at 280 (quoting CPLR § 401 (McKinney 1972) Practice Commentary at 477).  For this reason, among others, the Second Circuit was correct that, particularly in civil rights suits like Plaintiffs, the "conversion provision of section 103(c)" leaves the principles of res judicata "unaltered," such that claims unavailable in the original Article 78 proceeding are not barred simply because those claims might have been entertained in a converted action.  *See id.* at 781.

The Eastern District in *RRI Realty Corp. v. Incorporated Village of Southampton*, No. CV-84-3382, 1987 WL 10837 (E.D.N.Y. Apr. 30, 1987), reached this same conclusion in circumstances quite similar to Plaintiff's here.  In that case, the plaintiff sought to assert facial constitutional challenges to village ordinances.  The defendants argued that res judicata barred these challenges because the plaintiff had failed to raise them in its prior Article 78 proceeding.  *Id.* at *9.  The court rejected this argument.  Although the court acknowledged that "it is true that an Article 78 proceeding may be converted into a declaratory judgment action in order to challenge the constitutionality of a statute or ordinance," it concluded that "the mere possibility that an Article 78 proceeding may be changed into a declaratory judgment action pursuant to C.P.L.R.

§ 103(c) is not sufficient to preclude litigation of claims that were originally not properly raised in the Article 78 proceeding." *Id*. Similarly in this case, the "mere possibility" that the Appellate Division might have converted Plaintiff's Article 78 petition into a declaratory judgment action does not now preclude claims, like his facial challenge, that could not have been properly raised in his prior Article 78 proceeding.

The Southern District case that Defendants' cite for a contrary result, *Parker v. Corbisiero*, 825 F. Supp. 49 (S.D.N.Y. 1993), was decided incorrectly. Directly contradicting the Second Circuit *Davidson*'s decision, the *Parker* court erroneously believed that the possibility of converting an Article 78 proceeding to an ordinary civil action under C.P.L.R. § 7803 precluded any claim that might have been asserted in the converted action. *Id.* at 55. Notably, the district court in that case did not mention at all – let alone attempt to distinguish – the Second Circuit's *Davidson* decision despite its clear relevance, and it is likely that this controlling authority was not brought to the court's attention. Moreover, the Second Circuit has reaffirmed subsequent to *Parker* the principle that because an Article 78 petitioner "may not challenge the validity of a legislative act or regulation in an Article 78 proceeding," such "limitations on the jurisdiction of the Article 78 courts" mean that a federal "district court's consideration of that issue is not barred by principles of preclusion . . . ." *Hachamovitch v. DeBuono*, 159 F.3d 687, 695 (2d Cir. 1988). For these reasons, the *Parker* decision has no persuasive value to this case, and the Second Circuit's decisions in *Davidson* and *Hachamovitch* are controlling.

Finally, as Defendants acknowledge, the res judicata effect accorded federal immigration decisions has no application here. Federal courts reviewing immigration

determinations may entertain both as-applied and facial constitutional challenges without discretionary conversion of their review to a different type of proceeding.  *See* Def. Supp. Br. at 5 n.1.  Article 78 proceedings are clearly distinct, and most notably do not permit facial constitutional challenges.  *See Highland Hall Apts.*, 888 N.Y.S.2d at 70-71. The Second Circuit's *Davidson* decision addressed the specifics of New York res judicata law with respect to Article 78 proceedings and converted proceedings under C.P.L.R. § 103(c).  *Davidson*, 792 F.2d at 781.  Its conclusion that res judicata does not preclude claims that were not, and could not, have been properly raised in the original Article 78 proceeding must control in this case.[1]

## II.   Public Health Law § 230(10)(q) Does Not Provide a Mechanism To Ensure Application of Fairness-Related Procedures In Effect While a License Revocation Proceeding Is Under Direct Review

At the outset, it must be emphasized that Plaintiff's due process claim regarding post-hearing procedures is directed only at the absence of any procedural mechanism

---

[1] Defendants' argument in their supplemental brief that Plaintiff's as-applied challenges are barred by res judicata, *see* Def. Supp. Br. at 2-3, is no different from the arguments presented in Defendants' principal and reply briefs.  Def. Br. at 14-16, 22; Def. Reply Br. at 5-7.  As explained in Plaintiff's principal brief opposing Defendants' motion to dismiss, Pl. Br. at 54-55, these claims are not barred by res judicata because Plaintiff seeks money damages for these claims, which are clearly unavailable in Article 78 proceedings.  *See Colon v. Coughlin*, 58 F.3d 865, 870 n.3 (2d Cir. 1995).  And as explained above, the possibility that such damages might be available if an Article 78 court chooses in its discretion to convert a proceeding to a civil action does not expand res judicata to include all claims that might have been raised in a converted proceeding. *See Davidson*, 792 F.2d at 781.

To the extent the damages Plaintiff seeks are deemed incidental to the relief sought in his Article 78 proceeding, Plaintiff reiterates his request for leave to amend the complaint to plead additional damages that reflect the full range of harm suffered by Plaintiff.  Although Defendants suggest that any such amendment would be futile, a determination of futility should await a concrete proposed amendment to the complaint.

granting a neutral ALJ – not the OPMC Director, who investigates and prepares charges against physicians[2] – the ability to ensure compliance with new procedural law that comes into effect and imposes a "continuing" obligation while a license revocation hearing is under direct review, where the procedural change affects the fairness of the hearing. In this case, the relevant procedural change was the passage by the New York legislature of N.Y. P.H.L. § 230(10)(d-1), requiring that Defendants provide exculpatory evidence in their possession "on a continuing basis."

Because Plaintiff's hearing was still under direct review when this provision became effective, Plaintiff made a motion before the ALJ on July 28, 2009, requesting that Defendants comply with their new mandate under section 230(10)(d-1). *See* Affirmation of Roy P. Nemerson dated May 19, 2010, Ex. 5. The ALJ denied this request on November 6, 2009, stating unequivocally that "[t]here is no provision for an ALJ in this office to re-open a case." *Id.* The absence of a provision that would have allowed the ALJ to enforce Defendants' statutory obligations is the focus of Plaintiff's due process challenge regarding post-hearing procedures. Notably, Plaintiff's challenge does not concern the adequacy of procedures – N.Y. P.H.L. § 230(10)(q), in particular – that are available for reviewing new exculpatory evidence *once it has been made available*.

At oral argument and in Defendants' supplemental papers, it was suggested that section 230(10)(q)[3] might provide a procedure for the relief that Plaintiff seeks.

_____

[2] Among other duties, the Director of OPMC investigates suspected misconduct, *see* N.Y. P.H.L. § 230(10)(a)(i), and directs the preparation of charges, *see* N.Y. P.H.L. § 230(10)(a)(iv).

[3] N.Y. P.H.L. § 230(10)(q) states in full:

However, section 230(10)(q) is clear on its face that it does not provide such relief.  It provides no procedure for ensuring Defendants' compliance with the exculpatory evidence mandate of section 230(10)(d-1), for instance.[4]  Moreover, contrary to Defendants' assertions, Plaintiff does have standing to assert that 230(10)(q) does not provide the requested relief, and *Younger* abstention would be inappropriate because Plaintiff's disciplinary proceedings are no longer ongoing.  Finally, to the extent this Court has any doubt as to what relief section 230(10)(q) provides, the proper procedure is for the Court to stay consideration of this particular due process claim pursuant to *Railroad Comm'n of Texas v. Pullman Co.*, 312 U.S. 496 (1941), and to permit Plaintiff

---

     (q) At any time subsequent to the final conclusion of a professional misconduct proceeding against a licensee, whether upon the determination and order of a hearing committee issued pursuant to paragraph (h) of this subdivision or upon the determination and order of the administrative review board issued pursuant to paragraph (d) of subdivision four of section two hundred thirty-c of this title, the licensee may file a petition with the director, requesting vacatur or modification of the determination and order. The director shall, after reviewing the matter and after consulting with department counsel, determine in the reasonable exercise of his or her discretion whether there is new and material evidence that was not previously available which, had it been available, would likely have led to a different result, or whether circumstances have occurred subsequent to the original determination that warrant a reconsideration of the measure of discipline. Upon determining that such evidence or circumstances exist, the director shall have the authority to join the licensee in an application to the chairperson of the state board for professional medical conduct to vacate or modify the determination and order, as the director may deem appropriate. Upon the joint application of the licensee and the director, the chairperson shall have the authority to grant or deny such application.

[4] The statute also provides no authority for an ALJ to reopen a hearing if the ALJ deems it appropriate.

to pursue this suggested remedy while reserving its federal claims for potential consideration by this Court.

### A.     N.Y. Public Health Law § 230(10)(q) Does Not Provide the Relief that Plaintiff Seeks

Plaintiff's due process claim regarding post-hearing procedures does not concern the process for reconsidering the result of a hearing based on new evidence – which is the sole focus of section 230(10)(q).  Rather, Plaintiff argues that due process requires a mechanism for ensuring compliance with fairness-enhancing procedural rules – such as production of exculpatory evidence where the legislature mandates its production "on a continuing basis" – particularly where such procedural changes are ordinarily granted retroactive effect, *see Majewski v. Broadalbin-Perth Cent. Sch. Dist.*, 91 N.Y.2d 577, 584 (N.Y. 1998).  Section 230(10)(q), on its face, only provides a procedure for reconsideration *once exculpatory evidence has already been made available* – which, again, is not the subject of Plaintiff's challenge.

By its terms, section 230(10)(q) allows the OPMC Director to consider only the question "whether there is new and material evidence that was not previously available which, had it been available, would likely have led to a different result."  N.Y. P.H.L. § 230(10)(q).[5]  This provision clearly provides no means for an ALJ to ensure Defendants' compliance with their obligation under section 230(10)(d-1) to provide exculpatory evidence to a physician "on a continuing basis."  Indeed, there does not

_____

[5] A second clause of section 230(10)(q) allows the Director to consider "whether circumstances have occurred subsequent to the original determination that warrant a reconsideration of the measure of discipline."  N.Y. P.H.L. § 230(10)(q).  The limitation in this clause to reconsideration of the "measure of discipline" clearly forecloses the possibility that it authorizes the Director to order the production of exculpatory evidence.

appear to be any provision at all for an ALJ to consider post-hearing motions even while a matter is on direct review.

Section 230(10)(q)'s purpose and effect is, instead, much more limited.  It assumes that a petitioner under that section has already amassed new evidence supporting his or her position – new exculpatory evidence that might have been obtained on his own or, perhaps more likely, under Defendants' obligation to provide such evidence.  There is no reading of this provision that permits a petitioner to seek *production* of the exculpatory evidence required by section 230(10)(d-1) when, as here, such exculpatory evidence has been improperly withheld by Defendants.  Such production is what Plaintiff sought in his post-hearing motion before the ALJ.  It is the absence of a mechanism for ensuring such production – which section 230(10)(q) clearly does not provide and which due process requires – that Plaintiff now challenges.

> **B.** Pullman *Abstention, Rather Than Dismissal, Is the Appropriate Method To Resolve Any Uncertainty Regarding the Scope of N.Y. P.H.L. § 230(10)(q)*

It is abundantly clear that, on its face, section 230(10)(q) provides none of the relief that Plaintiff seeks.  The absence of a mechanism for obtaining this relief – in this case, Defendants' compliance with the exculpatory evidence requirement of section 230(10)(d-1) – is of course the subject of Plaintiff's due process challenge.  However, to the extent that this Court is uncertain as to the scope or application of this provision, *Pullman* abstention rather than dismissal would be appropriate to provide Defendants and the New York state courts an opportunity to interpret and apply the provision consistent with due process requirements.

*Pullman* abstention "may be appropriate where a claim implicates an unresolved or unclear issue of state law." *Handberry v. Thompson*, 436 F.3d 52, 73 (2d Cir. 2006). Three conditions must be fulfilled to justify such abstention: "(1) an unclear state statute is at issue; (2) resolution of the federal constitutional issue depends on the interpretation of the state law; and (3) the law is susceptible to an interpretation by a state court that would avoid or modify the federal constitutional issue." *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 100 (2d Cir. 2004) (internal quotation marks omitted).

As discussed above, section 230(10)(q) provides no mechanism for Plaintiff to request exculpatory evidence pursuant to section 230(10)(d-1). Nonetheless, *Pullman* abstention would be more appropriate than dismissal to confirm this interpretation of the statute by awaiting the outcome of a petition by Plaintiff to the OPMC Director under this provision. If the statute is somehow applied to ensure Defendants' compliance with the exculpatory evidence requirement of section 230(10)(d-1), then this interpretation by the state courts or administrative bodies would avoid – and likely dispose of – one of the federal constitutional issues that Plaintiff asserts in this federal litigation.[6]

If this Court opts to abstain pursuant to *Pullman*, then "the proper course is not for the Court to dismiss the complaint/petition insofar as it is maintained under Section 1983, but to retain jurisdiction over this aspect of the action pending resolution of the unsettled question of New York law by the state courts." *Bryant v. Comm'r of Social Srvs. of the City of N.Y.*, 530 F. Supp. 1175, 1186 (S.D.N.Y. 1982). This is so because *Pullman*-type

---

[6] Plaintiff's due process challenges to the burden of proof and absence of evidentiary rules in physician disciplinary hearings are separate matters, of course, and may be decided regardless of whether this Court abstains from deciding Plaintiff's due process claim regarding post-hearing procedure.

abstention "does not 'involve the abdication of federal jurisdiction, but only the postponement of its exercise.'"  *Id.* at 1185-86 (quoting *Harrison v. NAACP*, 360 U.S. 167, 177 (1959)).  Moreover, in submitting to state court adjudication, Plaintiff remains "free to return to federal court to pursue the constitutional issue if it has been specifically reserved from state court adjudication." *Fleet Bank, N.A. v. Burke*, 160 F.3d 883, 890 (2d Cir. 1998) (citing *England v. La. State Bd. of Med. Examiners*, 375 U.S. 411, 421 (1964)).

### C.  Plaintiff Has Standing To Challenge the Absence of a Procedure To Enforce the Exculpatory Evidence Requirement

Defendants' standing argument, *see* Defs. Supp. Br. at 8-10, misunderstands Plaintiff's challenge.  Plaintiff's argument is simply that the *absence* of a mechanism for an ALJ to ensure compliance with procedures in effect while a hearing is under direct review violates due process.  Plaintiff availed himself of the only apparent mechanism available to him by making a motion before the ALJ requesting that Defendants comply with § 230(10)(d-1).  The ALJ's conclusion that he had no power to grant this request confirms the absence of Plaintiff's sought-after procedural mechanism.  Plaintiff's inability to obtain, in this case, Defendants' exculpatory evidence necessary for a reconsideration petition, is an injury sufficient to confer standing in this case.

Perhaps more importantly, Plaintiff does not claim that section 230(q)(10) is itself unconstitutional.  For this reason, neither *Moose Lodge No. 107 v. Irvis*, 407 U.S. 163 (1972), nor *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091 (2d Cir. 1997), nor *MacPherson v. Town of Southampton*, No. 08 CV 4113, 2010 WL 3603128 (E.D.N.Y. Sept. 7, 2010), all cited by Defendants, is relevant to Plaintiff's standing.  Each of these cases concerns a plaintiff's direct challenge to the constitutionality of a statute or policy, and the plaintiffs

13

in those cases lacked standing for the simple reason that none had actually sought benefits or relief from the challenged statutes or policies.  In contrast, Plaintiff does not challenge section 230(q)(10) and therefore does not require standing to do so.

Section 230(q)(10) bears only tangential relevance to Plaintiff's due process claim, and only because Defendants suggest that this provision might provide essentially the relief that he seeks.  However, Plaintiff does not need to submit to the statute to argue that, on its face, it does not provide such relief.  The cases cited by Defendants are not to the contrary.  In *Aronson v. Hall*, 707 F.2d 693 (2d Cir. 1983) (per curiam), for instance, where a plaintiff did not exhaust available remedies, the Second Circuit rejected the due process claim not because the plaintiff lacked standing, but because the administrative review procedure that was "reasonably calculated to uncover and correct any error that may have occurred" satisfied due process on its face, *see id.* at 694, as the court found in a companion case, *see Charry v. Hall*, 709 F.2d 139, 146 (2d Cir 1983).  Similarly, the Second Circuit in *Dotson v. Griesa*, 398 F.3d 156 (2d Cir. 2005), rejected a potential due process claim based on the apparent adequacy of unexhausted procedures, not on standing grounds, *see id.* at 160, 161 n.2.  And although the Second Circuit, in a non-precedential summary order cited by Defendants, *Maddox v. Prudenti*, 303 F. App'x. 962 (2d Cir. 2008) (summary order), did purport to reject a challenge on standing grounds to the alleged absence of a procedure for attorneys to submit newly discovered evidence to challenge suspensions from practice, it did so only because there existed a statute that, quite obviously on its face, did provide this procedure, *see id.* at 964.

In contrast to these cases, section 230(10)(q), on its face, does not provide a mechanism for Plaintiff to seek the production of exculpatory evidence as required by

14

section 230(10)(d-1).  It provides only a process for requesting reconsideration of discipline based on evidence already obtained.  In the absence of any process to obtain the relief he seeks, Plaintiff clearly has standing to assert his due process claim.

In any event, to the extent that it is not obvious on its face whether or not section 230(10)(q) can provide the requested relief, or whether Plaintiff can himself obtain relief under this provision, the proper course of action in this case is to apply *Pullman*-type abstention and stay this portion of the federal proceedings to permit the state agencies and courts to interpret this provision more precisely.

### D. *Younger Abstention Is Inappropriate as to this Claim Because There Is No Ongoing, Coercive State Proceeding*

In addition to the reasons set forth in Plaintiff's memorandum in opposition to Defendants' motion to dismiss, *Younger* abstention is inappropriate with respect to Plaintiff's due process claim regarding post-hearing procedure because it addresses no ongoing, coercive state proceeding.

*Younger* abstention typically is applied where "the plaintiff seeks to enjoin the state proceeding entirely based on an alleged violation of constitutional or statutory rights."  *Pinckney v. Bd. of Educ. of Westbury Union Free Sch. Dist.*, 920 F. Supp. 393, 398 (E.D.N.Y. 1996).  This is clearly not the case here.  The relevant state proceeding concluded long ago – a hearing committee rendered a decision as to Plaintiff's discipline, and Plaintiff has pursued all administrative and judicial review of this decision.  Plaintiff does not seek to enjoin this proceeding.  Instead, Plaintiff seeks only to ensure that his ability to pursue a separate track for relief in state tribunals – beginning with the production of exculpatory evidence mandated by section 230(10)(d-1), and only then,

15

perhaps, followed by a petition pursuant to section 230(10)(q) – comports with federal due process requirements.

In particular, Plaintiff's due process claim regarding post-hearing procedure would do nothing to interfere with this, or any related, proceeding.  Absent such interference, *Younger* abstention is not required.  *See id.* at 398.  All that Plaintiff seeks is a mechanism by which he may request the production of exculpatory evidence required by P.H.L. § 230(10)(d-1), through motions directed at the ALJ.  Plaintiff's due process claim seeks no further federal court involvement.  If Plaintiff obtains the requisite evidence, he would presumably prepare a petition pursuant to P.H.L. § 230(10)(q) to seek modification or vacatur of his discipline from the OPMC Director, and, if necessary, perhaps Article 78 review of the Director's determination.  So aside from the specific procedural mechanism addressed by Plaintiff's due process claim, all aspects of the proceeding would remain before state tribunals.  An appropriate injunction here therefore would not "prevent the state from litigating the merits in its own tribunal" nor "preempt even a fraction of the state tribunal's power."  *Pickney*, 920 F. Supp. at 398 (quoting *Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 529 (7th Cir. 1988)); *see also Habich v. City of Dearborn*, 331 F.3d 524, 531 (6th Cir. 2003) (recognizing exception to *Younger*, also applicable to Plaintiff's due process claim as to post-hearing procedures, where claims in § 1983 suit are "collateral" to state proceedings – issues that "could neither be proven as part of the state case-in-chief nor raised as an affirmative defense").

Under these circumstances, *Younger* abstention is inappropriate.  This Court should decide the merits of Plaintiff's due process claim regarding post-hearing

procedure, or in the alternative, direct *Pullman*-type abstention and stay decision on this claim until state tribunals provide an interpretation of the scope of P.H.L. § 230(10)(q).

### III.   Plaintiff Does Not Assert a Selective Prosecution Claim or Seek Exculpatory Evidence in this Litigation

Defendants argue at length that Plaintiff may not prevail on claims of selective enforcement, *see* Defs. Supp. Br. at 5-8, and may not, through this Court, compel production of exculpatory evidence on either statutory or constitutional grounds, *see id.* at 14-19.  Plaintiff does not pursue any of these claims, however, and will therefore not burden this Court with an extensive rebuttal of Defendants' arguments.

It is worth noting, however, that evidence of the billing practices of other physicians is not intended to establish discriminatory application of disciplinary measures against Plaintiff.  What these billing practices establish is an absence of fraud altogether.  They show that 1) the synaptic therapy that Plaintiff performed could not be fully described by the billing codes available at the time; 2) there was no other authoritative guidance as to the appropriate way to bill for the procedure; and 3) the billing codes were selected because they were commonly accepted codes for describing synaptic therapy rather than elements of an intentionally fraudulent scheme.  Without a comprehensive set of billing codes, synaptic therapy providers could either 1) perform work without being paid for it; or 2) select the codes that most closely described the therapy and attach medical records to clarify and eliminate any confusion as to what procedure had been performed (as the billing company did in Plaintiff's case).  Given the lengths to which Plaintiff's biller went to make clear that Plaintiff had performed synaptic therapy and only synaptic therapy, it is doubtful that any reasonable factfinder could have discerned

17

fraud on the part of Plaintiff's biller or Plaintiff himself, particularly if presented with evidence that the codes used were standard practice.

Also, while Plaintiff does not ask this Court to order the production of exculpatory evidence in light of P.H.L. § 230(10)(d-1) or *Brady*-like constitutional principles, federal due process does require that the ALJ have the authority to entertain such requests and provide relief in the circumstances here, and as explained above and in Plaintiff's other papers.

## CONCLUSION

For the foregoing reasons, and for the reasons explained in Plaintiff's opposition to Defendants' motion to be dismiss and at oral argument, Defendants' motion should be denied.


Dated: New York, New York
      October 6, 2010

                                WATKINS, BRADLEY & CHEN LLP

                                    /s/

                                _____

                                Clifford Y. Chen
                                228 Park Avenue South #14905
                                New York, New York 10003