UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK



GARY TSIRELMAN, M.D.,

              Plaintiff,

   – against –

RICHARD F. DAINES, M.D., Commissioner
of Health, New York State Department of
Health; and New York State Department of
Health; and Kendrick A. Sears, M.D.,
Chairman of the State Board For Professional
Medical Conduct, New York State Department
of Health, and State Board For Professional
Medical Conduct and their employees and
agents,

              Defendants.

**MEMORANDUM, ORDER
& JUDGMENT**

10-CV-0903

**Appearances:**

For Plaintiff:

        Adam Francois Watkins
        Clifford Y. Chen
        Watkins, Bradley & Chen LLP
        228 Park Ave South #14905
        New York, NY 10003

        Julia Paskalova, Esq.
        Gary Tsirelman P.C.
        65 Jay Street, Third Floor
        Brooklyn, NY 11201

For Defendants:

        Erick T. Schneiderman
        Attorney General of the State of New York
        120 Broadway – 24th Floor
        New York, New York 10271
        By: Kathryn E. Leone



**JACK B. WEINSTEIN, Senior United States District Judge:**

I.      Introduction ......................................................................................................2

II.     Background.........................................................................................................4

        A.      New York State Public Health Law § 230 .........................................4

        B.      Plaintiff's Disciplinary Hearing.........................................................6

        C.      Plaintiff's State Court Appeal.............................................................7

        D.      Plaintiff's Subsequent Applications to Department .............................8

III.    Standard of Review .........................................................................................10

        A.      Rule 12(b)(6) Failure to State Claim ................................................10

        B.      Rule 12(b)(1) Lack of Subject Matter Jurisdiction...........................11

IV.     Law ...................................................................................................................11

        A.      Facial vs. As-Applied Challenges .....................................................11

        B.      Procedural Due Process ....................................................................12

        C.      Preclusion .........................................................................................13

V.      Application of Law to Fact...............................................................................14

        A.      Claims against Agency Defendants Dismissed .................................14

        B.      Challenge to Preponderance Standard ..............................................14

                1. Facial Challenge.........................................................................14

                2. As-Applied Challenge ................................................................19

        C.      Challenge to Evidentiary Rules ........................................................20

                1. Facial Challenge.........................................................................20

                2. As-Applied Challenge ................................................................21

        D.      Challenge to Rules Governing Reconsideration................................22

                1. Facial Challenge.........................................................................22

                2. As-Applied Challenge ................................................................23

VI.     Conclusion........................................................................................................26

## I.    Introduction

Plaintiff Gary Tsirelman's license to practice medicine was revoked by the State of New York. He alleges due process violations. *See* 42 U.S.C. §§ 1983 and 1988. He claims: (1) the preponderance evidentiary standard required at revocation hearings and the imposition of a fine

were unconstitutional; (2) the lack of specific evidentiary rules violates due process; and (3) due process requires an automatic mechanism for reconsideration of changes in the law designed to improve fairness in the administrative process.

Defendants Richard F. Daines, M.D., Commissioner of Health, New York State Department of Health; New York State Department of Health; Kendrick A. Sears, M.D., Chairman of the State Board for Professional Medical Conduct, New York State Department of Health; and State Board for Professional Medical Conduct and their employees and agents ("defendants") move for dismissal of the complaint. *See* Fed. R. Civ. P. 12(b)(1) and (6). They maintain that plaintiff's facial and as-applied challenges are meritless. They argue that federal precedents support a preponderance standard, and that New York courts have consistently upheld the preponderance standard in physician disciplinary proceedings.

There is considerable force to plaintiff's position that a physician, after years of training and developing skills, should not be driven from practice on less than an overwhelming probability that he was guilty of serious misconduct demonstrated with the most meticulous procedural protections. On balance the state's policy, based on the need for the public's protection from cheating physicians who add to the high costs of medical care—even if their curative treatment is effective—requires strict enforcement with procedures that provide only reasonable, rather than the highest, protections. In the instant case, the procedures utilized in revoking plaintiff's medical license resulted in an adequate demonstration that he was cheating regularly in his billings.

The New York physician disciplinary proceedings comports with due process and plaintiff's as-applied challenges are insufficient. The motion to dismiss the complaint is granted.

## II.     Background

This action arises from a determination by the New York State Department of Health

("Department"), based on charges of professional misconduct, revoking plaintiff's medical

license and imposing a $100,000 fine. The detailed procedural history and factual background of

this case is incorporated in the present memorandum. *See Tsirelman, M.D., v. Daines, M.D. et*

*al.*, 10-CV-0903, ECF No. 32 (E.D.N.Y. Oct. 14, 2010).

### A. New York State Public Health Law § 230

New York State Public Health Law § 230(10) sets forth the process for determining

professional misconduct by physicians in New York. Initial investigations are conducted by the

Department of Health Office of Professional Medical Conduct ("OPMC"). *See* N.Y. Pub. Health

Law § 230(10)(a). In consultation with a physician from the State Board for Professional

Medical Conduct, the OPMC Director then determines whether to commence disciplinary

proceedings. *Id.* The licensee is given notice of the charges and an opportunity to contest. *Id.*

§ 2301(10)(c),(d).

Attorneys from the Bureau of Professional Medical Conduct ("BPMC"), an office within

the Division of Legal Affairs of the Department of Health, prosecute the charges before an

Administrative Law Judge ("ALJ") and a Hearing Committee of the Board of Professional

Medical Conduct ("Committee"). The Committee is comprised of two licensed physicians and

one lay member appointed from the State Board for Professional Medical Conduct. *Id.* § 230(1)-

(7), (10)(e). The ALJ presides over the hearing but has no vote. *Id.*

At the hearing, physicians are entitled to: counsel; examination of all evidence;

production of their own expert and fact witnesses; other evidence on their behalf; issuance of

subpoenas for the production of witnesses and evidence; and cross-examination of opposing witnesses. *See id.* § 230(10)(c).

A decision containing findings of fact, the action to be taken, and supporting reasons must be rendered within 60 days of the hearing's conclusion. The Committee is not bound by the rules of evidence, but a decision to sustain charges must be based on a preponderance of the evidence. *Id.* § 230(f). If any charges are sustained, the Committee imposes a penalty. *Id.* § 230(10)(i).

Either party may seek administrative review of the Committee's decision, or commence litigation challenging the administrative decision. *See* C.P.L.R. article 78; N.Y. Pub. Health Law § 230-c.

At any time subsequent to the conclusion of the professional misconduct proceeding, the physician may petition the OPMC Director for limited post-final administrative review. *Id.* § 230(10)(q). Specifically, section 230(10)(q) of the Public Health Law provides:

> At any time subsequent to the final conclusion of a professional misconduct proceeding against a licensee, whether upon the determination and order of a hearing committee . . . the <u>licensee may file a petition with the director, requesting vacatur or modification of the determination and order.</u> The director shall, after reviewing the matter and after consulting with department counsel, determine in the reasonable exercise of his or her discretion whether there is new and material evidence that was not previously available which, had it been available, would likely have led to a different result, or <u>whether circumstances have occurred subsequent to the original determination that warrant a reconsideration</u> of the measure of discipline. Upon determining that such evidence or circumstances exist, the director shall have the authority to join the licensee in an application to the chairperson of the state board for professional medical conduct to vacate or modify the determination and order, as the director may deem appropriate. Upon the joint application of the licensee and the director, the chairperson shall have the authority to grant or deny such application.

*Id.* (emphasis added).

**B. Plaintiff's Disciplinary Hearing**

In 2007 the OPMC initiated professional misconduct proceedings against plaintiff. He was charged with: engaging in the fraudulent practice of medicine by billing an insurance company for medical procedures that he did not perform; submitting false reports that he had performed these procedures; ordering tests and treatments that were excessive or inappropriate in light of a patient's condition; and moral unfitness to practice medicine. Compl. ¶¶ 17, 18, 32.

In accordance with New York Public Health Law § 230, the Committee conducted an evidentiary hearing on the charges. A pre-hearing conference was held on March 20, 2013. *In the Matter of Gary Tsirelman, M.D.*, Determination & Order, BPMC 07-269 (Dep't of Health Dec. 5, 2007), Spiegelman Decl. Ex. 1 at 2, ECF No. 49. The hearing commenced on March 27, 2007, and was continued on April 27, May 25, June 1, June 22 and August 14, 2007. *Id.* Plaintiff contends uncertified and incomplete patient records were admitted into evidence during the hearing and the Department's medical expert, Dr. Carfi, relied upon those records in his testimony. Compl. ¶ 26.

In March 2007, plaintiff requested that OPMC produce a complaint made by Allstate Insurance Company to OPMC regarding plaintiff's billing practices and the "exculpatory" materials attached. The OPMC prosecutor supplied these materials, but disputed their characterization as exculpatory. Nemerson Decl., ECF No. 49, Ex. 4. In June 2007, plaintiff contended that the production was untimely and moved to: (1) strike the Allstate insurance investigator's testimony or allow additional cross-examination; and (2) order OPMC to turn over its entire investigatory/prosecution file. *Id.* The presiding ALJ denied the motion. *Id.*

On December 5, 2007, the Committee issued a Determination and Order holding that plaintiff had engaged in the fraudulent practice of medicine. The preponderance of the evidence

standard, prescribed by New York Public Health Law § 230(10)(f), was applied. The

Committee's conclusion was based, in part, on plaintiff's own testimony that he did not perform

'nerve destruction procedures' (NDP), the work for which he billed an insurance company.

Compl. ¶¶ 18, 21, 32. Acknowledging that it may not have had the complete medical records

before it, the Committee found:

> Even though we found [Plaintiff's] testimony completely lacked credibility, we gave
> [him] the benefit of the doubt where there was even a slight possibility that the 'missing
> information' (if it ever existed) would have helped [his] position. As an example, we did
> not conclude that if it was not documented, it was not done, which is normally a rational
> and accepted conclusion to make.

Spiegelman Decl., ECF No. 49, Ex. 1 at 46. Accordingly, the Committee dismissed charges that

plaintiff billed for certain unperformed services. *Id.*

The Committee revoked plaintiff's medical license and fined him $100,000. *In the*

*Matter of Gary Tsirelman, M.D.*, Determination & Order, BPMC 07-269 (Dep't of Health Dec.

5, 2007), Spiegelman Decl. Ex. 1 at 52-23.

### C. Plaintiff's State Court Appeal

Plaintiff challenged the defendants' action in an Article 78 proceeding in the Appellate

Division, Third Department. *See* NY PHL § 230-c(5). He contended that he was deprived of a

fair hearing by the introduction of incomplete and uncertified medical records. Compl. ¶ 35.

On April 9, 2009, the Appellate Division rejected plaintiff's due process claim. It

affirmed the revocation and fine. Compl. ¶¶ 33-36. The court wrote:

> We also find no merit in petitioner's argument that he was denied his rights to a fair
> hearing and due process by the Committee's admission and consideration of patient
> records that were uncertified and allegedly incomplete . . . . As for the assertion that the
> records were incomplete, petitioner argues that the complete treatment records for his
> patients would have reflected that he never ordered NPDs [nerve destruction procedures]
> or listed them as having been performed. We note, however, that the only documents in
> the record which listed the NDPs were bills. Thus, additional treatment records showing
> their absence would have been redundant and irrelevant to the issue of his knowledge and
> intent. The Committee did not sustain any charge where additional patient records could

7

have been exculpatory. The Committee fully explored the discrepancies in the records that were provided and gave the petitioner every opportunity to submit additional records.

*Matter of Tsirelman*, 61 A.D.3d 1128, 1130-31 (3d Dep't 2009) (*citing Matter of Sundaram v. Novello,* 53 AD3d 804, 807 (3d Dep't 2008)). Giving the plaintiff the benefit of any doubt, the Appellate Division upheld only those charges based on the bills contained in the records admitted into evidence. It did not uphold any charges that plaintiff had ordered excessive or unnecessary tests and treatments because it was possible that "additional patient records could have been exculpatory." *Id.*

Plaintiff subsequently sought reargument or, in the alternative, leave to appeal to the New York Court of Appeals. He argued that other practitioners billed for both synaptic treatment and nerve destruction procedures when they only performed synaptic treatments, and attached examples of such bills. While plaintiff's case was pending in the Appellate Division, New York amended its Public Health Law to require the furnishing of exculpatory evidence to accused physicians. *See* NY PHL § 230(10)(d-1) (effective November 3, 2008). The relief plaintiff sought in his motion included a remand "for further proceedings so that exculpatory information can be obtained pursuant to a recent amendment to NY Public Health law." Compl. ¶ 37-38; Pl.'s Mem. at 21; Spiegelman Decl., Ex. 4, ECF No. 48.

On June 26, 2009, the Appellate Division denied Plaintiff's motion for reagument and leave to appeal. Compl. ¶ 37-38. The same day, plaintiff sought leave to appeal the Appellate Division's Article 78 decision to the New York Court of Appeals. Spiegelman Decl., Ex. 4. The New York Court of Appeals denied an appeal on October 22, 2009. *Id.*

### D. Plaintiff's Subsequent Applications to Department

On June 28, 2009, while his motion for leave to appeal was still pending before the Court of Appeals, plaintiff submitted a "Motion to Renew and Reargue" to OPMC. Pl.'s Mem. at 22.

He requested, as "exculpatory evidence" from the Committee's ALJ, records of other physicians' billing practices for synaptic treatments that mirrored his own, and various entities' approval of those practices. Compl. ¶59; Nemerson Decl., Ex. 1.

On July 31, 2009, Plaintiff's request was denied by an ALJ. Compl. ¶ 60; Nemerson Decl., Ex. 2 at 2.

On November 6, 2009, an ALJ held that the decision of July 31, 2009 was a "final ruling" and that for his case to be reopened plaintiff must file a petition with the Director of the Office of Professional Medical Conduct ("director"), pursuant to Section § 230(10)(q). Compl. ¶¶ 59-60. The ALJ noted that Section § 230(10)(d-1), requiring the production of exculpatory evidence, is applicable to ongoing hearings only, that it was added to the Public Health Law after plaintiff's hearing was closed, and that nothing indicates it should be applied retroactively. Nemerson Decl., Ex. 2.

Plaintiff did not contest the November 6, 2009 ruling in an Article 78 proceeding or a petition to the director of OPMC. Instead, he filed a complaint in this court seeking declaratory and injunctive relief against revocation of his license to practice medicine, the return of the $100,000 fine, and attorney's fees under 42 U.S.C. §§ 1983 and 1988. Because administrative corrective action was still available to plaintiff, the case was stayed on October 12, 2010. *See Tsirelman, M.D., v. Daines, M.D. et al.*, 10-CV-0903, ECF No. 32 (E.D.N.Y. Oct. 14, 2010).

On January 3, 2013, plaintiff filed a motion for reconsideration with the OPMC's director under N.Y. Public Health Law § 230(10)(q). *See* Watkins Decl. ¶ 4, Exh. C. The director denied the motion. *See id.* ¶ 5, Exh. D.

Plaintiff's federal case was reopened on November 26, 2013. Defendants' renewed their motion to dismiss on January 9, 2014. A hearing was conducted on April 28, 2014. *See* Mot. to Dismiss Hr'g Tr. ("Hr'g Tr.").

## III.    Standard of Review

### A.    Rule 12(b)(6) Failure to State Claim

Dismissal of a claim is proper when the pleading party has failed "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, well-pleaded facts are accepted as true and considered in the light most favorable to the non-moving party. *See Scheuer v. Rhodes*, 416 U.S. 232, 236-37 (1974). "Judgment on the pleadings is appropriate where material facts are undisputed and where judgment on the merits is possible by considering the contents of the pleadings." *Sellers v. M.C. Floor Crafters, Inc.*, 842 F.2d 639, 642 (2d Cir. 1998).

To withstand the motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Whether a complaint states a plausible claim to relief "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *In re Amaranth Natural Gas Commodities Litig.*, 730 F.3d 170, 180 (2d Cir. 2013).

In determining the adequacy of the complaint, any written instrument attached to the complaint as an exhibit or incorporated in the complaint by reference, as well as integral documents upon which the complaint relies will be considered. *Subaru Distrib. Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005).

**B. Rule 12(b)(1) Lack of Subject Matter Jurisdiction**

As with a 12(b)(6) motion, all material factual allegations in the complaint are accepted as true when deciding a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir.1998). "The plaintiff bears the burden of proving by a preponderance of the evidence that subject matter jurisdiction exists." *Bonimev. Avaya, Inc.*, 2006 WL 3751219, at *1 (E.D.N.Y. Dec. 20, 2006), aff'd, 547 F.3d 497 (2d Cir. 2008) (citing *Luckett v. Bure*, 290 F.3d 493, 497 (2d Cir. 2002)). Subject matter jurisdiction "must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Drakos*, 140 F.3d at 131. Rather, when subject matter jurisdiction is at issue the court may consider relevant documents that are extrinsic to the complaint. *See Phifer v. City of New York*, 289 F.3d 49, 55 (2d Cir. 2002).

**IV.    Law**

**A. Facial vs. As-Applied Challenges**

"To successfully challenge a statute on its face, the challenger must show that no set of circumstances exists under which the Act would be valid." *Ohio v. Akron Ctr. for Reproductive Health*, 497 U.S. 502, 514 (1990); *United States v. Laurent*, 861 F. Supp. 2d 71, 93–94 (E.D.N.Y. 2011); *see also United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is . . . the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."); *see Diaz v. Paterson*, 547 F.3d 88, 101 (2d Cir.2008) (applying *Salerno* standard in evaluating facial constitutional challenge); *but see Washington v. Glucksberg*, 521 U.S. 702,

739–40 (1997) (Stevens, J., concurring) (observing the standard for assessing facial challenges has been the subject of debate).

In an as-applied challenge, the question is whether the statute was unconstitutional as applied to the facts of the case. *See Laurent*, 861 F. Supp. 2d at 93. "Factual context and defendant's circumstances are critical." *Id.*

## B. Procedural Due Process

The Due Process Clause of the Fourteenth Amendment prohibits states from depriving any person of "life, liberty, or property, without due process of law." U.S. Const. amend. XIV. It protects both procedural and substantive rights. *Salerno,* 481 U.S. at 746. "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner . . . This requirement has traditionally been referred to as 'procedural due process.'" *Id.* "Procedural due process rules are meant to protect persons . . . from the mistaken or unjustified deprivation of life, liberty, or property." *Carey v. Piphus,* 435 U.S. 247, 259 (1978).

Under procedural due process, "standard analysis . . . proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke,* 131 S. Ct. 859, 861 (2011). To determine whether there have been sufficient procedural protections, courts rely on the test in *Mathews v. Eldridge*, weighing: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and

the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"[T]he Fourteenth Amendment guarantee of due process is fully applicable to adjudicative proceedings conducted by state and local government administrative agencies." *New York State Nat. Org. for Women v. Pataki*, 261 F.3d 156, 163 (2d Cir. 2001); *Richardson v. Perales*, 402 U.S. 389, 401–02 (1971).

### C. Preclusion

Federal courts "must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also* 28 U.S.C. § 1738.

Under the doctrine of res judicata, or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). The preclusive impact of a state judgment is determined by state law. "New York applies a 'transactional approach' to *res judicata* issues." *Ruggiere v. Bloomberg*, 09-CV-2160, 2009 WL 3259156 (E.D.N.Y. Oct. 9, 2009). "[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Hameed v. Aldana*, 296 Fed. App'x 154 (2d Cir. 2008) (quoting *O'Brien v. City of Syracuse,* 54 N.Y.2d 353, 357 (1981)).

"The doctrine of collateral estoppel, a narrower species of *res judicata*, precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or

causes of action are the same." *Ryan v. New York Tel. Co.*, 62 N.Y.2d 494, 500 (N.Y. 1984); *see also Anghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 295 (E.D.N.Y. 2013).

## V.    Application of Law to Fact

### A. Claims against Agency Defendants Dismissed

The New York State Department of Health and the State Board for Professional Medical Conduct, defendants in this matter, are protected from suit in federal courts by the Eleventh Amendment. The Eleventh Amendment does not permit private individuals to sue state agencies or departments in federal court. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 98-100 (1984); *Posr v. Court Officer Shield No. 207,* 180 F.3d 409, 414 (2d Cir. 1999) ("[a]n official arm of the state enjoys the same Eleventh Amendment immunity from suit in federal court as is enjoyed by the state itself"). New York State has not waived its immunity with respect to physician disciplinary proceedings, nor has it consented to this action.

### B. Challenge to Preponderance Standard

#### 1. Facial Challenge

Plaintiff's facial challenge to New York Public Health Law § 230(10)(f), imposing a "preponderance of the evidence" standard in medical disciplinary proceedings, is limited to proceedings where the Committee seeks to revoke or annul a physician's license "based primarily on fraud allegations." *See* Pl.'s Mem. of Law in Opp. to Defs. Mot. to Dismiss ("Pl.'s Mem.") at 25, ECF No. 57.

Plaintiff argues that federal due process demands a "clear and convincing" standard in fraud-based disciplinary proceedings. In support, he cites to decisions from Washington, Wyoming, and Oklahoma. *See Nguyen v. Dep't of Health Med. Quality Assurance Comm'n*, 29 P.3d 689 (Wash. 2001); *Painter v. Abels,* 998 P.2d 931 (Wyo. 2000); *Johnson v. Bd. Of*

14

*Governors of Registered Dentists*, 913 P.2d 1339, 1345 (Okla. 1996). He does not cite any New York or federal cases holding the preponderance standard unconstitutional.

The federal and New York courts that have considered the issue have all determined that the preponderance of the evidence standard of proof comports with due process in medical disciplinary proceedings. *See, e.g., Chalasani v. Daines*, 10 CV 1978, 2011 WL 4465564 (E.D.N.Y. June 30, 2011) *report and recommendation adopted*, 10-CV-1978, 2011 WL 4465408 (E.D.N.Y. Sept. 26, 2011); *In re Gould v. Bd. of Regents of Univ. of State of N.Y.*, 478 N.Y.S.2d 129, 130 (3d Dep't 1984); *Giffone v. De Buono*, 693 N.Y.S.2d 691, 694 (3d Dep't 1999).

The highest courts of several other jurisdictions have similarly rejected calls for a higher standard of proof. *See, e.g,, Sherman v. Comm'n on Licensure to Practice the Healing Art*, 407 A.2d 595, 601 (D.C.App. 1979); *Petition of Grimm*, 635 A.2d 456, 461 (N.H. 1993); *In re Polk*, 90 N.J. 550 (N.J. 1982); *N.D. State Bd. of Med. Examiners v. Hu*, 726 N.W.2d 216, 230 (N.D. 2007).

In determining the proper standard of proof, the three factors set forth in *Mathews v. Eldridge* must be considered: (1) "the private interest that will be affected by the official action;" (2) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail;" and (3) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." 424 U.S. 319, 335 (1976).

With respect to the first factor, physicians have an important private interest in their medical license. *See* Compl. ¶ 42, 43, 49, 50 (characterizing medical license as a property interest); *see also, Chalasani*, 2011 WL 4465564 at *7. As plaintiff asserts, the loss of a

professional license is a serious matter for the license holder. It represents the loss of a livelihood and a career. *RRI Realty Corp. v. Inc. Vill. of Southampton*, 870 F.2d 911, 917 n.4 (2d Cir. 1989) ("plaintiffs denied licenses required for pursuing a particular occupation . . . have a liberty interest in earning a livelihood and are normally not required to show an entitlement to the license they seek in order to state a claim").

But a physician's interest must be balanced against the need for ethical medical practices protecting the public. The second *Mathews* factor, the governmental interest at stake, is readily apparent in the context of medical disciplinary proceedings. "[I]t is beyond dispute that New York's disciplinary proceedings implicate an important state interest in protecting the health of its citizens by regulating the practice of medicine within its borders." *Selkin v. State Bd. For Prof'l Med. Conduct*, 63 F.Supp.2d 397, 402 (S.D.N.Y.1999) (*citing Doe v. Connecticut*, 75 F.3d 81, 85 (2d Cir. 1996); *Blake v. Lang*, 669 F.Supp. 584, 589 (S.D.N.Y. 1987); *Middlesex County Ethics Comm'n*, 457 U.S. at 434 (1982)); *see also Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) ("We recognize that the States have a compelling interest in the practice of professions within their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions.").

Given the structure of New York's misconduct hearings, there is no indication that the preponderance of the evidence standard produces an undue risk of error under the third *Mathews* prong. During the disciplinary hearing, physicians are entitled to: representation of counsel; examination of all evidence against them; expert and fact witnesses and other evidence on their behalf; issuance of subpoenas for the production of witnesses and evidence; and cross-examination of opposing witnesses. *See* N.Y. Pub. Health Law § 230(10)(c). A decision

containing findings of fact, the action to be taken, and supporting reasons must be rendered within 60 days of the hearing's conclusion. *Id.* Either party may seek administrative review of the Committee's decision, or commence litigation pursuant to Article 78. *Id.* § 230-c. As the District Court for the Eastern District of New York and the New Jersey Supreme court have both recognized, "the subject matter involved in the disciplinary proceeding is such that the risk of confusion, misunderstanding, and error is at a minimum" because "[t]he issues, the evidence and the standards are thoroughly understood by the parties involved." *Chalasani*, 2011 WL 4465564 (*quoting In re Polk*, 90 N.J. at 567).

Plaintiff argues that medical disciplinary proceedings based primarily on fraud are unique in that they threaten the charged individual with "stigma" as well as the deprivation of an important private interest, necessitating clear and convincing evidence. Pl.'s Mem. at 26-27. In support, plaintiff points to the Supreme Court's decision in *Santosky v. Kramer*, 455 U.S. 745, 756-57 (1982), holding an intermediate standard of proof—clear and convincing evidence— "necessary to preserve fundamental fairness in a variety of government-initiated proceedings that threaten the individual involved with 'a significant deprivation of liberty' or 'stigma.'" (*quoting Addington v. Texas*, 441 U.S. 418, 425 (2008)). He relies upon the Federal Rules requiring a heightened pleading standard for fraud, Fed. R. Civ. P. 9(b), and cases applying the clear and convincing standard in common law fraud cases. *E.g., Ty Inc. v. Softbelly's, Inc.*, 517 F.3d 494, 499 (7th Cir. 2008) (noting, "in the absence of a statute or rule," traditional common law or equitable principles dictate that fraud must be proved by clear and convincing evidence).

Plaintiff's arguments are unconvincing. The Supreme Court has recognized that the preponderance of the evidence standard comports with due process in federal administrative proceedings involving the commission of fraud. *See, e.g., Steadman v. W.E.C.*, 450 U.S. 91

(1980) (upholding use of preponderance standard in SEC hearing involving antifraud provisions of securities law). Congress and the Supreme Court have repeatedly applied the preponderance standard under federal fraud statutes. *See, e.g., Herman & MacLean v. Huddleston*, 459 U.S. 375, 389 (1983) (applying preponderance standard to civil enforcement of antifraud provisions of securities law); *Grogan v. Garner*, 498 U.S. 279, 288 (1991) (holding Congress chose the preponderance standard for substantive causes of action for fraud (collecting cases and statutes)); *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 491 (1985) (suggesting preponderance standard applies to civil actions under RICO).

Several of the New York State cases upholding the preponderance of the evidence standard in medical disciplinary proceedings involved charges of fraudulent misconduct. *See, e.g., Matter of Bazin v. Novello*, 301 A.D.2d 975, 975 (3d Dep't 2003) (physician charged with misconduct including fraudulent billing of insurance companies); *Matter of Giffone v. DeBuono*, 263 A.D.2d 713, 714 (3d Dep't 1999) (charging physician with improper touching under guise of providing legitimate medical treatment). In analogous disciplinary proceedings against attorneys involving allegations of fraudulent conduct, the Court of Appeals for the Second Circuit has held that the preponderance standard provides adequate due process. *See, e.g., In re Theodore Friedman*, 51 F.3d 20, 22 (2d Cir. 1995) (upholding preponderance standard where attorney was charged with knowingly making false affidavit); *In re Seymour Freidman*, No. MC-93-0180, 1996 WL 705322, at *7 (E.D.N.Y. Nov. 26, 1996) (upholding preponderance standard where attorney was charged with instructing witness to give false testimony).

The preponderance standard has also been repeatedly upheld in cases involving other stigmatizing state actions. *See, e.g., Valmonte v. Bane*, 18 F.3d 992, 994 (2d Cir. 1994) (maintenance and publication of names on central registry of suspected child abusers); *Petition*

*of Grimm*, 138 N.H. 42, 50 (N.H. 1993) (physician disciplinary proceedings involving sexual relations with patient); *Ghandi v. State of Wisconsin Med. Bd.*, 168 Wis.2d 299, 307 (Wis. Ct. App. 1992) (physician disciplinary proceeding involving inappropriate touching); *Matter of Polk*, 90 N.J. at 569 (physician disciplinary proceeding finding sexual abuse of juvenile female patients).

The private interest at issue here does not quite rise to the level at which the Supreme Court has held a clear and convincing standard of evidence to be <u>constitutionally required</u>. *See, e. g., Addington v. Texas, supra* (civil commitment); *Woodby v. INS.,* 385 U.S. 276, 285 (1966) (deportation); *Chaunt v. United States*, 364 U.S. 350, 353 (1960) (denaturalization); *Schneiderman v. United States*, 320 U.S. 118, 125 (1943) (denaturalization).

In light of the compelling government interest and the procedural safeguards provided to the physicians, the preponderance of the evidence standard is constitutionally adequate in physician misconduct proceedings based primarily on fraud.

### 2. As-Applied Challenge

Plaintiff's as-applied challenge to the standard of proof in his disciplinary proceeding fares no better than does his facial challenge on the merits.

He utilized the available procedures in his defense that ensured a fair hearing under the *Mathews* analysis. He was represented by counsel in a six-day hearing, testified on his own behalf, called seven witnesses, presented documentary evidence, and cross-examined the State's witnesses. *See* Spiegelman Decl., Ex. 1. The State had a compelling interest in protecting the public from dishonest physicians who engage in fraudulent practices. In weighing the plaintiff's private interest against the State's compelling interest and the low risk of error in the disciplinary

hearing, the preponderance standard provided plaintiff with due process. *See Mathews,* 424 U.S. at 335.

Plaintiff's as-applied and facial challenges to the burden of proof in New York physician disciplinary proceedings are dismissed.

### C. Challenge to Evidentiary Rules

#### 1. Facial Challenge

Plaintiff asserts that a physician cannot receive a fair hearing on fraud charges in a physician disciplinary proceeding because specific rules of evidence are not required during the hearing.

He has not met the heavy burden of showing that no set of circumstances exist under which a physician can receive a fair disciplinary hearing on fraud charges without specific rules of evidence being applied. *Ohio v. Akron Ctr. for Reproductive Health,* 497 U.S. 502, 514 (1990). The evidence in administrative proceedings must be reliable in order to afford adequate due process protections. *See Richardson v. Perales,* 402 U.S. 389, 401 (1971). But, the fact that specific rules of evidence do not apply does not mean that the evidence admitted is unreliable. The absence of specific evidentiary rules in administrative proceedings does not violate due process. *See, e.g., Balbuena v. Mattingly,* No. 05-cv-2986, 2007 WL 2845021, at *8 (S.D.N.Y. Sept. 28, 2007) ("[T]here is no constitutional requirement that specific rules of evidence must apply in order for an administrative hearing to comport with due process.").

The *Mathews* analysis applies to the evidentiary rules in physician disciplinary proceedings as to the standard of proof. Although no specific rules of evidence apply, the Department must prove its case by a "fair preponderance of the credible evidence," meaning "testimony and exhibits found worthy to be believed." *In the Matter of Gary Tsirelman, M.D.,*

Determination & Order, BPMC 07-269 (Dep't of Health Dec. 5, 2007), Spiegelman Decl. Ex. 1 at 36. The procedural protections afforded to a physician throughout the hearing minimize risk of error, comporting with due process.

### 2. As-Applied Challenge

Plaintiff brings an "as applied" challenge to the "absence of evidentiary rules in medical discipline hearings based on fraud." Pl.'s Mem. at 57. But, he fails to demonstrate any basis for this as-applied challenge.

He challenged the defendants' action in an Article 78 proceeding in the Appellate Division prior to bringing federal claims. Both the Article 78 proceeding and the instant federal action involve the same parties or their privies: the disciplinary proceeding was brought on behalf of the New York State Department of Health; the defendants in the present federal action are the New York State Department of Health, the State Board for Professional Medical Conduct, the New York State Commissioner of Health and the Chairman of the Board of Professional Medical Conduct, in their official capacities.

In his Article 78 proceeding, plaintiff claimed that his due process rights were violated by the admission of uncertified and incomplete patient records, and expert testimony based on those records, for the Hearing Committee's consideration. The Appellate Division considered and rejected plaintiff's claim based on incomplete records. Compl. ¶¶ 33-36. Specifically, the court held:

> We also find no merit in petitioner's argument that he was denied his rights to a fair hearing and due process by the Committee's admission and consideration of patient records that were uncertified and allegedly incomplete . . . . The Committee did not sustain any charge where additional patient records could have been exculpatory. The Committee fully explored the discrepancies in the records that were provided and gave the petitioner every opportunity to submit additional records.

*Matter of Tsirelman*, 61 A.D.3d at 1130-31.

An as-applied due process claim based on admission of incomplete records is barred from being relitigated in federal court by collateral estoppel. *Parker*, 93 N.Y.2d at 349-50; *Ryan*, 62 N.Y.2d at 500 ("collateral estoppel, . . . , precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party or those in privity, whether or not the tribunals or causes of action are the same").

There are no persuasive allegations of evidentiary rulings that allowed consideration of "irrelevant, unreliable, and prejudicial evidence." Pl.'s Mem. at 57-58. There is no reason to doubt that an ALJ and the Hearing Committee could give—and would give—appropriate weight to the kinds of medical records submitted.

Plaintiff's as-applied challenge to the absence of evidentiary rules is dismissed as meritless.

### D. Challenge to Rules Governing Reconsideration

Plaintiff's due process claim based on the lack of a non-discretionary mechanism for reconsideration or reopening to apply changes in the law that "go to the fairness of an administrative hearing" is without merit.

#### 1. Facial Challenge

Plaintiff argues that due process requires: "that when there is a change to procedural rules that go to the fairness of an administrative proceeding – such as the one here requiring Defendants to produce exculpatory evidence – and when this change occurs while the proceeding is still under direct review, Defendants must provide some means for giving effect to the changed procedural rule, such as a reconsideration or reopening mechanism." Pl.'s Mem. at 59.

The Constitution does not provide a right to reconsideration of a final determination in an administrative hearing. Ample avenues for appeal at both the administrative and state court level

exist. Either party may seek administrative review of the Committee's decision, or commence litigation pursuant to Article 78. *See* N.Y. Pub. Health Law § 230-c.

New York's Public Health Law provides a discretionary mechanism to reopen or reconsider a hearing. A physician may petition the OPMC director for post-final administrative review at any time subsequent to the final conclusion of the professional misconduct proceeding—a process of which plaintiff availed himself. *Id.* § 230(10)(q). Specifically, section 230(10)(q) of the Public Health Law provides: "At any time subsequent to the final conclusion of a professional misconduct proceeding against a licensee, whether upon the determination and order of a hearing committee . . . the licensee may file a petition with the director, requesting vacatur or modification of the determination and order."

Plaintiff would require the law go even further and provide a non-discretionary mechanism to reopen or reconsider. There is no indication that a discretionary determination to reopen or reconsider, such as that provided by Public Health Law § 230(10)(q), would result in a high risk of error. Thus, even under a *Mathews* analysis, due process does not require a non-discretionary mechanism to effect a change in the law.

### 2. As-Applied Challenge

At the core of plaintiff's as-applied challenge to the reconsideration mechanisms is his claim that he was repeatedly denied access to exculpatory evidence, which would have exonerated him of fraudulent billing. He argues that once New York amended its Public Health Law to require the production of exculpatory evidence to accused physicians, defendants were obligated to turn over any such material and provide a non-discretionary mechanism for reopening his hearing. *See* NY PHL § 230(10)(d-1) (effective November 3, 2008). He contends that failing to do so was a violation of his due process rights.

During plaintiff's hearing, he argued that it was common practice for physicians to bill for both synaptic treatment and NDPs when only synaptic treatments were performed. He claims that the OPMC denied him access to requested "exculpatory" evidence that would have bolstered this defense. Specifically, plaintiff claims that defendants withheld exculpatory documents of other physicians who billed as he did. *See* Hr'g Tr. at 19:9-14; 21:7-20.

Some of the requested "exculpatory" materials were provided to plaintiff by defendants upon request during the hearing. The OPMC turned over the complaint made by Allstate Insurance Company to OPMC regarding plaintiff's billing practices and materials attached thereto. Nemerson Decl., ECF No. 49, Ex. 4. Others were arguably in plaintiff's possession, or could have been acquired through his right to subpoena documents and call witnesses. Plaintiff failed to utilize his right to subpoena records of other insurers or to call an expert to testify to the fact that he was applying the normal billing codes—both of which were protected by section 230(10)(c).

The argument that plaintiff did not exercise his subpoena power because he did not know the records of other insurers would be exculpatory is undermined by the fact that he raised this defense during the hearing and called the medical coder for the company who did his billing to testify that he used the appropriate medical codes. *See* Hr'g Tr. at 21:7-20.

Following the hearing—in which plaintiff was represented by counsel, testified on his own behalf, called seven witnesses, presented documentary evidence, and cross-examined the State's witnesses—the Committee issued a Determination and Order holding that plaintiff had engaged in the fraudulent practice of medicine. The Committee's conclusion was based, in part, on plaintiff's own testimony that he did not perform NDPs for which he billed. Spiegelman Decl., ECF No. 49, Ex. 1; Compl. ¶¶ 18, 21, 32.

Plaintiff challenged the Committee's decision in an Article 78 proceeding. While plaintiff's Article 78 challenge was pending in the Appellate Division, New York amended its Public Health Law to require the production of exculpatory evidence to accused physicians. *See* NY PHL § 230(10)(d-1) (effective November 3, 2008). After his appeal was denied, plaintiff sought reargument or, in the alternative, leave to appeal to the New York Court of Appeals. The relief plaintiff sought in his motion included a remand "for further proceedings so that exculpatory information can be obtained pursuant to a recent amendment to NY Public Health law." Compl. ¶ 37-38; Pl.'s Mem. at 21; Spiegelman Decl., Ex. 4, ECF No. 48. The Appellate Division denied Plaintiff's motion for reargument and leave to appeal. The New York Court of Appeals also denied an appeal on October 22, 2009. *Id.*

While his motion for leave to appeal was still pending before the Court of Appeals, plaintiff submitted a "Motion to Renew and Reargue" to OPMC. Pl.'s Mem. at 22. He requested as "exculpatory evidence" from the Committee's ALJ, records of other physicians' billing practices for synaptic treatments that mirrored his own, and various entities' approval of those practices. Compl. ¶59; Nemerson Decl., Ex. 1.

On July 31, 2009, Plaintiff's request was denied by an ALJ. Compl. ¶ 60; Nemerson Decl., Ex. 2 at 2. On November 6, 2009, an ALJ held that the decision of July 31, 2009 was a "final ruling" and that for his case to be reopened plaintiff must file a petition with the Director of the Office of Professional Medical Conduct ("director"), pursuant to Section § 230(10)(q). Compl. ¶¶ 59-60. The ALJ noted that Section § 230(10)(d-1), requiring the production of exculpatory evidence, is applicable to ongoing hearings only, that it was added to the Public Health Law after plaintiff's hearing was closed, and that nothing indicates it may be applied retroactively. Nemerson Decl., Ex. 2.

On January 3, 2013, plaintiff availed himself of the discretionary mechanism to reopen or reconsider his hearing by filing a motion with the OPMC's director under N.Y. Public Health Law § 230(10)(q). *See* Watkins Decl. ¶ 4, Exh. C. The director denied the motion. *See id.* ¶ 5, Exh. D. He concluded that the purportedly exculpatory evidence demonstrating other physicians billed in a similarly misleading manner without being prosecuted "does not reduce [plaintiff's] culpability." *Id.* He also noted, the "specific, allegedly exculpatory, material [cited] was sought by [plaintiff] at the time of the hearing . . . . No such evidence was in the Department's possession. And [plaintiff] . . . produced none in [his] submission." *Id.*

Plaintiff's due process rights were adequately protected by the procedures in place. Plaintiff was provided with and utilized adequate procedural safeguards and avenues of appeal. The defense regarding proper billing codes was raised during plaintiff's hearing and the so-called exculpatory evidence requested was available to him through the testimony of his own insurance coder, the ability to have expert witnesses come forward, and the power to subpoena documents. *See* Hr'g Tr. at 21:9-14; N.Y. Pub. Health Law § 230(10)(c). Plaintiff's subsequent requests for possibly exculpatory evidence and retroactive application of section § 230(1s0)(q) were considered and rejected by two ALJs and the director of OPMC.

The proceedings before the Hearing Committee, multiple ALJs, the OPMC Director, and the New York State courts provided plaintiff with adequate procedural protections. His facial and as-applied challenges to the Public Health Law's rules governing reconsideration are without merit.

## VI.     Conclusion

Defendant's motion to dismiss the complaint is granted as to all claims. Costs and disbursements are not awarded. They were not sought.

SO ORDERED.

Jack B. Weinstein
Senior United States District Judge

Date:   May 13, 2014
        Brooklyn, New York